IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SEAGATE TECHNOLOGY, INC., <br><br> Defendant. | No. C 04-01593 WHA <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this action involving insurers' obligation to defend their insured, defendant/counterclaimant moves for partial summary judgment on its counterclaim for breach of contract, and plaintiffs/counterclaim defendants cross-move for partial summary judgment on the same claim. For the reasons explained below, defendant's motion is **DENIED** and plaintiffs' cross-motion is **GRANTED**.

**STATEMENT**

More than a decade ago, defendant/counterclaimant Seagate Technology, Inc. purchased liability insurance from plaintiffs/counterclaim defendants National Union Fire Insurance Company of Pittsburgh, PA ("NIU"), American International Underwriters Insurance Company, and American International Specialty Lines Insurance Company ("AISLIC"). In 2000, Convolve, Inc. and Massachusetts Institute of Technology filed a lawsuit in the Southern District

of New York triggering the insurers' obligation to defend. In 2004, the insurers filed a declaratory action in this district arguing they had no defense obligation in the *Convolve* action.

Another six years of motions, appeals, and proceedings after remand resulted in a district court judgment (by Judge James Ware) ruling that the insurers had a duty to defend in the *Convolve* action from November 1, 2000, until July 18, 2007. At this point, NIU decided it would rely on the district court's entry of judgment and stop paying for Seagate's defense. Meanwhile, the parties cross-appealed again.

In January 2012, our court of appeals ruled, *inter alia*, that the district court erred in concluding that NIU's duty to defend Seagate terminated in 2007. Put differently, NIU suddenly found itself five years late on payments for Seagate's legal defense. Seagate then delivered invoices for its legal bills from 2007 to 2012 from the *Convolve* action to NIU and made a demand for prejudgment interest. NIU paid only part of the legal bills and paid prejudgment interest on the reduced amount. NIU based the reduced payment on California Civil Code Section 2860, which limits the insurer's obligation to pay legal defense fees to rates the insurer pays to attorneys it retains "in the ordinary course of business . . . in similar actions."

Seagate contends that the appellate decision converted NIU's reliance on the lower court rulings into breach of the insurance contract *nunc pro tunc* to 2007. As a result, it contends, NIU cannot rely on Section 2860 and must pay the full fees as well as prejudgment interest on the full amount due. At oral argument, counsel represented that the delta between the fees paid and the fees allegedly due is in excess of 20 million dollars. NIU replies that it properly relied on the district court order and that any remaining disputes are subject to mandatory arbitration under Section 2860(c).

**ANALYSIS**

Summary judgment is proper when the pleadings and the evidence in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). For the purposes of the instant motions, no facts are at issue. The dispute hinges on a purely legal question suitable for summary judgment: did NIU breach its insurance contract with Seagate when NIU decided to stop defending Seagate in

2

reliance on the district court judgment that was subsequently reversed on appeal? This order holds that there was no breach.

The parties have not produced any authority that is directly on point, and the Court's own research has not revealed any. Nevertheless, the application of general principles provides a clear result. In the ordinary case, the duty to defend terminates upon a judicial determination that the insured does not have a potentially-covered claim. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 301 (1993). The decision granting summary judgment became such a judicial determination when judgment was entered under Rule 54(b) (Dkt. No. 324). The entry of judgment created a final order with *res judicata* effect. *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987). It is a "basic proposition that all orders and judgments of courts must be complied with promptly. If a [defendant] believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Maness v. Meyers*, 419 U.S. 449, 458 (1975).

These general principles compel the conclusion that NIU did not act wrongfully when it chose to rely on the district court's final judgment. Seagate appealed but did not seek a stay of the adverse district court ruling at issue. As a result, NIU was entitled to the benefit of the (erroneous) ruling that there was no longer a duty to defend. To hold that NIU was committing a breach of contract all along would convert a final judgment under Rule 54(b) into a provisional one and directly conflict with the principle that absent a stay, a party must comply with a judgment pending appeal. Although NIU cross-appealed and chiefly lost, the cross-appeals did not challenge the basic victory that it had already won before Judge Ware.

The only analogous decision cited by the parties is *Auto-Owners Insurance Co. v. Potter*, 242 F. App'x 94 (4th Cir. 2007), an unpublished, non-precedential opinion. In *Auto-Owners*, which involved insurer liability for a settlement, (1) the insurer brought a declaratory relief action to determine if there was a duty to defend, (2) the district court held there was no duty, and (3) the insurer chose not to defend during the pendency of the (successful) appeal because there was no stay of the litigation. *Id.* at 97–98. The Fourth Circuit held that the withdrawal of defense was not unjustified under North Carolina law. The insurer had a right to rely on the

3

declaratory judgment absent a stay because the federal declaratory judgment had the force and effect of a final judgment under North Carolina law. *Id.* at 101–02. The Fourth Circuit reasoned that (*id.* at 101):

> it would tip the balance too far in favor of the insured to hold that an insurer must wait for all appeals of a declaratory judgment (relieving it of a duty to defend) to be exhausted before removing its defense of the insured. The fact that the insurer provided a defense for the insured until the time the insurer received a declaratory judgment Order demonstrates to this Court that the insurer adhered to the spirit of the public policy requiring defense of insured persons.

Although not binding in this district, the Fourth Circuit's reasoning in *Auto-Owners* is persuasive and, notably, it comports with the general principle in *Maness* that judgments and orders of courts should be complied with promptly.

This does not mean that Seagate is not entitled to the benefit of its own bargain. Our court of appeals reversed the prior district court decision and NIU's contractual responsibilities were reinstated retroactively. *See Levy v. Drew*, 4 Cal. 2d 456, 459 (1935) (when a judgment is reversed on appeal the appellant is entitled to restitution of all things taken from him under the judgment). Reinstatement does not require an additional finding of wrongful breach, however.

None of the decisions cited by Seagate alters this conclusion. Judge Ware's grant of summary judgment on Seagate's counterclaim for breach of contract against AISLIC (Dkt. No. 306) is not analogous. There, the initial judgment found no duty to defend and was reversed on appeal. The Court subsequently ruled on remand that there was a duty to defend between 2000 and 2007 (Dkt. No. 264 at 9, 13). Because there was no dispute that AISLIC did not pay up until 2008, the Court then granted summary judgment on the issue of breach for the 2000 to 2007 time period (Dkt. No. 306 at 7). The distinction, however, is that AISLIC did not base its decision not to defend in the first instance on a final judgment in its favor. AISLIC decided on its own that it was not bound by the contract. NIU, in contrast, made its decision to stop defending after the entry of a declaratory judgment holding that it had no duty to defend. NIU was entitled to rely on final judgment in its favor during the pendency of the appeal, whereas AISLIC gambled that it would later be vindicated in the first instance.

Seagate cites *Harbison v. American Motorists Insurance. Company*, 636 F. Supp. 2d 1030 (E.D. Cal. 2009) (Judge Frank Damrell Jr.), for the proposition that where a "declaratory judgment is reversed on appeal, the initial decision in the insurer's favor provides no insulation against further claims of breach of contract or bad faith" (Dkt. No. 376 at 3). This proposition misstates the holding of *Harbison*. Although *Harbison* involved an appeal, it did not address a fact pattern analogous to the case at bar.

In *Harbison*, the insured contended that his insurer denied coverage in bad faith. The district court granted summary judgment in favor of the insurer, and our court of appeals reversed. On remand, the insurer argued that the summary judgment finding was evidence that the original decision to deny coverage was reasonable. The district court disagreed because "public policy mandates that the reasonableness of the insurer's decision must be evaluated as of the time it was made, and that no subsequent court ruling can be the justification for the decision." In other words, the insurer did not know at the time it made the coverage decision that it would later win (and subsequently lose) at summary judgment and, therefore, it could not rely on that later judgment to support its prior decision to deny coverage. Otherwise, as a practical matter, an insured would be denied the benefit of an appeal because the overturned decision that there was no bad faith denial of coverage would still support a conclusion that there was no bad faith denial of coverage. 636 F. Supp. 2d at 1035–37, 1043.

The instant action is quite different. NIU is not attempting to advance a subsequent declaratory judgment backwards in time to its decision to stop defending. NIU based its decision to stop defending Seagate on the then-extant declaratory judgment itself. The public policy rationale in *Harbison* is inapplicable here. Quite the opposite, public policy favors requiring a party to immediately comply with the entry of final judgment (although, as NIU concedes, a party executing a judgment during appeal may be later responsible for returning the executed judgment if the appeal is successful). Thus, under these particular circumstances, the initial decision in the insurer's favor *does* provide insulation against a further claim of breach of contract.

5

The *Pruyn* and *Isaacson* decisions are inapposite. In *Pruyn v. Agricultural Insurance Company*, 36 Cal. App. 4th 500, 514–15 (1995), a California court of appeal declared that "[a]n insurance company bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy. Wrongful failure to provide coverage or defend a claim is a breach of contract." Seagate also relies on *Isaacson v. California Insurance Guarantee Ass'n*, 44 Cal. 3d 775, 791 (1988), for the same proposition. The facts of *Pruyn*, however, related to the enforcement of a stipulated judgment following settlement. Similarly, *Isaacson* involved an attempt to seek reimbursement after settlement of a claim. Neither fact pattern has any relevance here. To the extent that the general principle from *Pruyn* and *Isaacson* is applicable, the critical language is "wrongful failure." It was not *wrongful* for NIU to stop defending Seagate after the district court's entry of judgment in its favor and therefore there was no breach.

Two other decisions cited by Seagate are somewhat helpful in that they use the word "appeal," but they do not have analogous fact patterns. Both *CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal. App. 3d 598 (1986), and *Fireman's Fund Insurance Co. v. Chasson*, 207 Cal. App. 2d 801 (1962), involved an insurer's obligation to defend in the first instance — not whether it breached a duty to defend following appeal of a successful declaratory action. Although these decisions state that an insurer's duty to defend continued until the declaratory judgment was final "on appeal," the actual principle being advanced in both decisions was that the duty continued until the judgment was *final*. To conclude otherwise would mean that all final judgments under Rule 54(b) were in fact provisional until there was no longer any possibility of appeal, indeed, until all time had expired for further petition for a writ of certiorari.

The parties present a question of first impression in our circuit. Once a party obtains a favorable declaration of rights from a district judge, is that party entitled to place any reliance on the judgment of the district judge, or must it do so only at its peril lest it someday be reversed on appeal? This order holds that interim reliance on the judgment of a district judge is entitled to at

6

least some consideration in the calculus unless the effectiveness of the order is stayed by the district court or the appellate court pending appeal.

Accordingly, this order holds that NIU did not breach its insurance contract with Seagate when NIU decided to stop defending Seagate in reliance on a district court declaratory judgment in its favor.

\*          \*          \*

With the conclusion in hand that no breach occurred, the other disputes in the parties' cross-motions fall away quickly. The parties dispute whether NIU was entitled to reduce its payment of fees, and in turn the amount of prejudgment interest, under Section 2860: "[t]he insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended." But, "an insurer who *wrongfully* denies coverage may not rely on section 2860 after the fact, once it has agreed to — or been found obligated to — provide a defense." *Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*, 761 F. Supp. 2d 904, 914 (N.D. Cal. 2011) (Judge Richard Seeborg) (emphasis added).

Again, the key word is "wrongfully." NIU did not wrongfully deny coverage after 2007; now that its contractual obligations have been reinstated, it has elected to pay and it may accordingly take advantage of Section 2860. By the same token, NIU properly based its ten percent prejudgment interest damages calculation on the reduced payment. During the pendency of the appeals, Seagate should have been aware that it was retaining expensive counsel at a risk to itself. If Seagate had wanted to change this calculus, it should have made a motion for stay pending appeal.

Finally, Seagate complains in its motion for partial summary judgment that NIU has not provided information sufficient to determine the specific fee payment reductions or the amount of prejudgment interest NIU paid. Seagate requests an accounting or in the alternative that it be permitted to take discovery on this issue. Given the holding that NIU properly relied on Section 2860, these requests amount to a dispute over the specific amount of attorney's fees paid

7

(the question of prejudgment interest is contingent on the resolution of that dispute). Although Seagate should have reasonable access to this type of information, this falls plainly within the mandatory arbitration provision of Section 2860(c), which provides: "[a]ny dispute concerning attorneys fees . . . shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute." These requests are accordingly **DENIED**.

## CONCLUSION

Seagate's motion for partial summary judgment is **DENIED**. NIU's cross-motion for partial summary judgment is **GRANTED**. Judgment will be entered for plaintiff in a separate order.

**IT IS SO ORDERED.**

Dated: January 25, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8