IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SEAGATE TECHNOLOGY, INC.,<br><br>Defendant. / | No. C 04-01593 WHA<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART** |

**INTRODUCTION**

In this action involving insurers' obligation to defend their insured, a prior summary judgment order addressed the parties' disputes running from 2007 onward. The parties now cross-move for summary judgment on disputes from November 2000 to August 2007. For the reasons explained below, defendant's motion is **GRANTED IN PART AND DENIED IN PART** and plaintiffs' cross-motion is **DENIED**.

**STATEMENT**

Over the last nine years this action has acquired a convoluted history. The following excerpts provide the background for the present cross-motions.

1. **JULY 1999 TO SEPTEMBER 2003: ORIGINS AND NON-PAYMENT.**

In July 1999, Seagate Technology, Inc. purchased liability insurance from plaintiffs/counterclaim defendants National Union Fire Insurance Company of Pittsburgh, PA ("NIU"), American International Underwriters Insurance Company ("AIU"), and American

1   International Specialty Lines Insurance Company ("AISLIC").  In July 2000, Convolve, Inc. and
2   Massachusetts Institute of Technology filed a lawsuit against Seagate in the Southern District of
3   New York.  Seagate tendered defense of the action to its insurers who refused the tender.  Our
4   court of appeals subsequently confirmed (more than a decade later) that the *Convolve* action
5   triggered the NIU insurance policy (Dkt. No. 347 at 3).  Thus, NIU's duty to defend arose as of
6   the date Seagate tendered defense of the action to NIU:  November 1, 2000.  The insurers admit
7   that none of them defended Seagate during the 2000–2003 period.

### 2. SEPTEMBER 2003 TO APRIL 2005: PARTIAL PAYMENT BY AIU.

Based on an interrogatory served in the *Convolve* action, AIU agreed to defend Seagate subject to a reservation of rights starting in September 2003.  AIU did not, however, pay the full extent of Seagate's legal bills.  Instead, AIU conditioned its payments on extra-contractual billing guidelines.  AIU also reduced the rates it paid for Seagate's outside counsel based on California Civil Code Section 2860, which limits the insurer's obligation to pay legal defense fees to rates the insurer pays to attorneys it retains "in the ordinary course of business . . . in similar actions."  Although AIU had elected to start defending, NIU did not follow suit.

In April 2004, the insurers filed the instant declaratory action before Judge James Ware contending that they had no duty to defend Seagate in the *Convolve* matter (Dkt. No. 1).  In June 2004, Seagate counterclaimed for, *inter alia*, breach of the insurance contracts (Dkt. No. 12).  The counterclaim alleged that "Seagate is entitled . . . to receive payment from [the insurers] for the covered expenses incurred and/or paid by Seagate . . . in the defense of the *Convolve* Litigation."  Seagate's counterclaim requested damages and prejudgment interest (*id.* at 11, 13).  The *Convolve* litigation was ongoing at the time Seagate filed its counterclaim, and the counterclaim does not expressly limit recovery to damages antedating the counterclaim.

### 3. APRIL 2005 TO AUGUST 2007: PARTIAL PAYMENT BY NIU AND AIU.

In April 2005, Judge Ware denied NIU's motion for summary judgment on the duty to defend, finding that the Convolve action raised a "bare possibility" of coverage sufficient to trigger the NIU insurance policy (Dkt. No. 60 at 13).  Nevertheless, NIU admits that it did not begin contributing to Seagate's defense until at least August 2005 (Dkt. No. 424 ¶¶ 5–6).  For

1   the period running from August 2005 to August 2007, the parties' interpretations of the facts
2   diverge.

3   The payment correspondence sent by the insurers to Seagate took the form of payment
4   letters indicating the amounts the insurers believed they owed to Seagate; the letters did not
5   always include simultaneous payment. Seagate admits that some of the payment letters from
6   AIU during the August 2005 to August 2007 time period were written as being on behalf of both
7   AIU and NIU. Seagate nonetheless argues that NIU did not begin defending Seagate until
8   August 2007, because in 2005–2007 some of the payment letters were still sent on behalf of AIU
9   only. After August 2007, the payment correspondence was routinely identified as being on
10  behalf of both AIU and NIU. For example, a September 2005 payment letter from the insurers to
11  Seagate stated: "subject to AIU's and National Union's reservation of all rights as expressed
12  herein, AIU and National Union agree that their contribution to this invoices totals
13  $122,558.74." The letter also noted throughout that "AIU and National Union will pay" various
14  charges. Yet, a *subsequent* letter from November 2006 stated: "subject to AIU's reservation of
15  all rights as expressed herein, AIU agrees that its contribution to this invoice totals $105,430.00"
16  — without any mention of NIU. The November letter also stated throughout that "AIU will pay"
17  various charges (Dkt. Nos. 424-1, 425).

18  NIU disagrees with Seagate's interpretation of this history. According to NIU, AIU's
19  billing reviewer, Jordan Harriman, was instructed in August 2005 that all subsequent reviews
20  would be conducted on behalf of both NIU and AIU. Some of the ensuing payment letters were
21  then written as being on behalf of both NIU and AIU. In a declaration, Harriman admits that due
22  to "error or inadvertence" some post-August 2005 payment letters to Seagate stated only that
23  they were sent on behalf of AIU. The table below shows the dates when each kind of payment
24  letter was sent.

**POST-AUGUST 2005 PAYMENT LETTERS**

| Payment Letters Expressly On Behalf of NIU and AIU | Payment Letters on Behalf of AIU Only |
|---|---|
| September 22, 2005 (two letters) | November 9, 2006 (two letters) |
| October 26, 2005 (one letter) | December 12, 2006 (three letters) |
| November 18, 2005 (one letter) | February 8, 2007 (five letters) |
| February 7, 2006 (one letter) | |
| August 21, 2007 (four letters) | |

Following the August 2007 letters, Harriman consistently sent payment letters that expressly stated they were on behalf of both NIU and AIU. In all instances, NIU and AIU reimbursed Seagate for less than its full defense expenses due to reductions based on Section 2860 billing rates and AIU's extra-contractual billing guidelines.

### 4. AUGUST 2007 TO JANUARY 2012: TERMINATION AND PAYMENT FOR THE 2000–2003 PERIOD.

In July 2007, Judge Ware ruled that the insurers' duty to defend had terminated (Dkt. No. 217 at 12). A subsequent Rule 54(b) judgment in 2010 specified that the duty to defend ran from November 2000 through July 2007. In reliance on these rulings, NIU and AIU paid Seagate's legal expenses on invoices dated prior to the date of Judge Ware's 2007 order (less discounts corresponding to Section 2860 and AIU's billing guidelines), and then NIU stopped paying for Seagate's defense.

In August and September of 2008, the insurers paid Seagate for its full defense expenses (without any discounts) from the time of tender in November 2000 through September 2003 (when AIU began to defend Seagate). The insurers did not, however, pay prejudgment interest for this two-year span.

### 5. 2012 TO 2013: RECENT EVENTS.

In January 2012, our court of appeals ruled, *inter alia*, that the district court erred in concluding that NIU's duty to defend Seagate terminated in 2007. NIU, finding itself suddenly five years late on payments for Seagate's legal defense, agreed to pay Seagate's post-2007 legal bills along with prejudgment interest, but at Section 2860 reduced rates.

The action was transferred to the undersigned in September 2012. In December 2012, the parties cross-moved for summary judgment on the propriety of NIU's post-2007 payments. A January 2013 order ruled (1) that the insurers did not breach their insurance contracts when they stopped defending Seagate in reliance on a district court judgment in their favor; (2) that NIU therefore could rely on Section 2860 to reduce rates; and (3) that the parties' remaining disputes regarding the post-2007 period were subject to mandatory arbitration under Section 2860.

An April 5 order then directed the parties to tee up all remaining issues for resolution given the advanced age of the case. The instant motions ensued. Seagate now contends that NIU breached its insurance contract during the pre-2007 periods in which it failed to defend, and that NIU is liable for the full amount of Seagate's legal bills (less any amounts paid by AIU) plus prejudgment interest. Seagate further contends that although the issues of breach and interest are suitable for summary judgment, the parties have agreed to arbitrate the specific amounts owed by NIU (and AIU) for Seagate's defense. NIU and AIU respond that Seagate waived its pre-2007 claims of breach, and that there was no breach because NIU contributed to Seagate's pre-2007 defense expenses. NIU and AIU agree that issues involving the reasonableness of the rates and fees charged for Seagate's defense are subject to arbitration.

**ANALYSIS**

Summary judgment is proper when the pleadings and the evidence in the record "show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(a). An issue is genuine only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

1. **WAIVER.**

    A. **NIU Had Notice of the Pre-2007 Claims.**

NIU contends that the instant motion briefing represents the first time *since 2010* that Seagate has raised claims for breach of contract for the 2003–2005 and 2005–2007 time periods, as well as the first time *since 2008* that Seagate has sought prejudgment interest on the amounts

5

the insurers paid in 2008 for Seagate's defense in the 2000–2003 period. NIU argues that Seagate let these issues slide for a few years and that they should therefore be deemed waived. This order disagrees.

The action was most recently put on hold in 2010 when the parties stipulated to a Rule 54(b) judgment (Dkt. Nos. 323–24) which was then appealed. By stipulation, the parties agreed to stay Seagate's counterclaim for breach of contract. Following reversal and remand, the action was transferred to the undersigned in September of 2012. A case management conference was scheduled, and the parties submitted a joint case management statement (Dkt. No. 360).

This order holds that the broad wording of the case management statement showed that both the pre-2007 breach issues and prejudgment interest on monies paid in 2008 were still in play. *First*, the "motions" section of the joint statement explained that (*id.* at 4 (emphasis added)):

> "[t]he parties intend to stipulate to a lifting of the stay of its [*sic*] Breach of Contract Counterclaim for the purpose of presenting *certain legal issues* for decision, and, as appropriate, resolving *any issues remaining* on the counterclaim. Once the stay is lifted, the parties intend to file cross-motions regarding the applicability of California Civil Code § 2860 to the post-July 2007 time period *and Seagate's Counterclaim for Breach of Contract*."

Although perhaps cleverly drafted, this section could not have been read as simply limiting the breach of contract claim to the post-2007 time period. The section began by anticipating at least two rounds of briefing: a preliminary round to present "certain legal issues for decision," and then a second round to resolve "any issues remaining" on the counterclaim. The second sentence in the section was ambiguous, but could have been read as treating the "counterclaim for breach of contract" as distinct from the "applicability of . . . [Section] 2860 to the post-July 2007 time period." Thus, the wording here signaled a broad understanding of the remaining scope of the breach of contract claim.

The "legal issues" section of the joint statement did not call out pre-2007 breaches. The "relief" section of the statement, however, was also broadly worded. It stated: "Seagate seeks an award of damages for its Breach of Contract Counterclaim measured by its defense costs incurred in the *Convolve* Action and prejudgment interest." This statement did not limit the

6

breach of contract claim to any time period; rather, it showed that the claim for relief was anchored generally to "defense costs incurred" in the underlying action.

*Second*, regarding prejudgment interest, the "relief" section quoted above expressly called out prejudgment interest without any temporal limitation. Moreover, the "legal issues" section of the statement likewise identified "[w]hether National Union is liable for prejudgment interest" as an issue that remained in the case — again without temporal limitation.

The joint statement broadly identified the breach counterclaim and prejudgment interest as being in play. The applicable time periods for breach and prejudgment interest were not identified *with specificity* until the current round of summary judgment briefing. Nevertheless, NIU's contention that Seagate was silent on these issues, or that NIU somehow lacked notice of them, is not borne out by the record following remand. The Court is disappointed that NIU counsel made such a misleading argument at the hearing.

It must be also recalled that Seagate filed the counterclaim in 2004, long before the counterclaim could have applied to post-2007 harms. At the time of filing in 2004, the counterclaim's obvious target was the insurers' prior failure to pay damages. The *Convolve* action, however, was ongoing, and the similarly broad language of the counterclaim captured the ongoing harm engendered by NIU's non-payment. NIU does not explain how damages from various points in 2000–2007 could then fall by the wayside while post-2007 harms survived a three-year interregnum — or, calculated differently, the eight-year period prior to NIU's December 2012 summary judgment motion.

Prior to 2007, the counterclaim could only have applied to pre-2007 harms. Similarly, Seagate's 2004 prayer for prejudgment interest (Dkt No. 12 at 13) only applied (at the time) to NIU's failure to pay for Seagate's defense costs for the 2000–2003 period. NIU then delayed payment until 2008 — after rulings clarified that the money was long overdue. NIU cannot now claim that the delay created by its own refusal to pay should insulate it from prejudgment interest requested in the prayer for relief.

NIU's current position is also internally inconsistent. NIU now asserts that the current summary judgment round provided its first notice that Seagate's counterclaim is being asserted

7

for periods prior to 2007. NIU thus cannot simultaneously claim that its December 2012 motion for summary judgment applied to the entirety of Seagate's counterclaim — including the portion of which it was unaware.

### B. Seagate Did Not Affirmatively Waive Its Claims.

NIU fails to identify any act or omission constituting a waiver, nor any resulting reliance or prejudice. NIU cites various moments in recent years where Seagate *could have specifically articulated* the remaining bases of its claims. But, NIU does not establish that these opportunities amounted to obligations or prejudice. For example, as explained above, the parties' joint case management statement on remand did not specify the applicable periods of breach and prejudgment interest. Yet, NIU does not argue (much less demonstrate) that it relied on this omission in any way, or that it was harmed thereby.

### C. Seagate's Claims Were Not Abandoned In Prior Rounds of Summary Judgment Briefing.

Aside from the question of whether NIU recently had notice of Seagate's intent to pursue its pre-2007 breach and prejudgment interest claims, NIU argues that because these claims were not raised in prior rounds of summary judgment briefing, Seagate has abandoned them. This order disagrees.

As an initial matter, it must be noted that there have been at least six prior rounds of summary judgment briefing in the nine years of this litigation. NIU does not present any explanation why the immediately prior (sixth) round of summary judgment briefing should be the round with preclusive effect. This prior history also stands in sharp contrast to the current round, wherein an order expressly advised that all remaining issues must be teed up for decision on pain of waiver.

NIU cites *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005), for the proposition that a party abandons claims for relief by not raising them in opposition to a motion for summary judgment. This decision is distinguishable. *Jenkins* involved cross motions for full summary judgment by both sides. Here, Seagate only moved for partial summary judgment in the last round (Dkt. No. 368). NIU responds that its December 2012 cross-motion sought complete summary judgment on Seagate's breach of contract counterclaim, and thus Seagate

8

1 abandoned any contentions it did not advance in that round. Yet, NIU's motion in December
2 2012 only addressed Seagate's counterclaim as it applied to the post-2007 period.

3 NIU's citation of *USA Petroleum Co. v. Atlantic Richfield Co.*, 13 F.3d 1276 (9th Cir.
4 1994), is inapposite. *Richfield* held that when an issue was properly raised on summary
5 judgement, a party was required to present all of its contentions before the lower court in order to
6 maintain its challenge on appeal. *Id*. at 1283. The procedural posture here is obviously
7 dissimilar and the issue of breach for the pre-2007 period was not raised by either sides' prior
8 motions for summary judgment.

9 NIU's citation of *Respironics, Inc. v. Invacare*, 303 F. App'x 865, 878 (Fed. Cir. 2008),
10 is likewise inapposite. In *Respironics*, the lower court concluded based on the parties' summary
11 judgment briefing that only one issue remained for trial. The Federal Circuit then held that
12 issues that were not teed up at summary judgment could not undergird a post-trial motion for
13 judgment as a matter of law. Again, the summary judgment procedural posture here is
14 dissimilar: unlike *Respironics*, there has not been a full trial during which a party silently
15 allowed an issue to lurk.

16 **2. SUMMARY JUDGMENT IS GRANTED IN PART.**

17 Having determined that Seagate did not waive its remaining claims, this order will now
18 address the issues of breach and prejudgment interest according to the time frames in which the
19 insurers adhered to — and derogated from — their contractual obligations. This order will then
20 identify which issues are subject to arbitration. As will be further explained below, a genuine
21 issue of material fact precludes a final, complete grant of summary judgment on all disputes.

22 **A. November 2000 to September 2003.**

23 In 2008, NIU and AIU reimbursed Seagate for its legal bills from the time of tender
24 (November 2000) through the date when AIU began to defend Seagate (September 2003). The
25 insurers have not, however, paid prejudgment interest.

26 "In a diversity case, state law controls the award or denial of prejudgment interest."
27 *Safeway Stores, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 64 F. 3d 1282, 1291 (9th
28

Cir. 1995). Where, as here, the damages are certain (because the insurers have already paid them), "prejudgment interest *must* be granted as a matter of right" *Ibid.* (emphasis in original).

Other than the waiver argument addressed above, NIU and AIU do not present any basis for denying prejudgment interest. Accordingly, this order awards prejudgment interest to Seagate for this time period (measured from the dates of the invoices to the date(s) of payment in 2008), and to this extent Seagate's motion for summary judgment is **GRANTED IN PART**.

### B. September 2003 to September 2005.

AIU began reimbursing Seagate for its legal expenses in September 2003, less deductions based on Section 2860 and AIU's billing guidelines. NIU admits that it did not begin participating in Seagate's defense until late in 2005. NIU contends both that it began participating in Seagate's defense in April 2005 (Dkt. No. 427 at 4–5), and "shortly after" April 2005. Yet, according to the Harriman declaration, NIU's billing reviewer allegedly was instructed to conduct future reviews on behalf of both NIU and AIU in August of 2005. The first payment letters that expressly stated that NIU was participating in the defense were not sent out until September 22, 2005.

NIU argues that because Seagate was reimbursed by AIU at Section 2860 rates during the 2003–2005 period in which NIU did not pay, Seagate therefore has been "appropriately reimbursed for its defense of the Underlying Action" (Dkt. No. 423 at 13). Not so. Under Section 2860 "[t]he insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended." But, "an insurer who *wrongfully* denies coverage may not rely on Section 2860 after the fact, once it has agreed to — or been found obligated to — provide a defense." *Michael Taylor Designs, Inc. v. Travelers Prop. Cas. Co. of Am.*, 761 F. Supp. 2d 904, 914 (N.D. Cal. 2011) (Judge Richard Seeborg) (emphasis added). NIU is attempting to piggyback its contractual obligations onto AIU's payments at Section 2860 rates. NIU provides no authority for this argument. Indeed, NIU's practice would defeat the statute's purpose of

encouraging insurers to pay by allowing a defaulting insurer to escape liability when another insurer fulfills its own obligations.

AIU's contribution aside, NIU wrongfully denied coverage and therefore cannot take advantage of Section 2860. NIU is liable to Seagate for Seagate's full defense bills for the time period when NIU did not pay — minus a deduction for AIU's contribution. AIU paid part of those bills; NIU must pay the remainder without the benefit of a Section 2860 deduction.[*] This order holds that the correct window for this part of the summary judgment ruling is the date that AIU began defending in September 2003, to the date of the letter in which insurers first notified Seagate that NIU was participating in the defense: September 22, 2005. These damages are also known and NIU does not dispute accuracy of the underlying invoices. Thus, this order also awards Seagate prejudgment interest on the amounts that NIU failed to pay. To this extent, Seagate's motion for summary judgment is **GRANTED IN PART**.

### C. September 22, 2005 to August 21, 2007.

Seagate admits that NIU participated in its defense after August 21, 2007. The parties dispute what occurred between September 22, 2005, and August 21, 2007. NIU admits that certain payment letters sent during this period stated simply that they were on behalf of AIU, but argues that declarations in the record demonstrate that NIU was defending the entire time. Seagate responds that the letters between 2005 and 2007 stating only that they were on behalf of AIU demonstrate that NIU "did not commence full participation in Seagate's defense until August 21, 2007" (Dkt. No. 428 at 4).

The parties' dispute over the correct interpretation of evidentiary record cannot be resolved on summary judgment. This order finds that there is a genuine issue of material fact regarding whether NIU was participating in Seagate's defense between September 22, 2005 and August 21, 2007. This narrow issue (and no other issues) will be resolved at trial. To this extent, summary judgment is **DENIED IN PART**.

---

[*] This order does not address whether or not NIU might owe AIU for some portion of the monies paid to Seagate while NIU wrongfully failed to defend.

11

### D. Issues Subject to Arbitration.

For the time periods where the insurers were participating in Seagate's defense, disputes over the precise reduced rates available under Section 2860 are subject to mandatory arbitration. Section 2860 arbitration is separate from a general agreement to arbitrate because Section 2860 specifies a single-arbitrator proceeding. For AIU, the reasonableness of its reduced rates is subject to mandatory arbitration from 2003 onward. Because this order denies summary judgment for the September 22, 2005 to August 21, 2007 time period, the question of whether NIU may take advantage of Section 2860 for that time period must wait.

Aside from the issue of Section 2860 rates, the parties have agreed that other disputes over fees — such as the reasonableness of the full rates Seagate paid for its defense — will also be subject to arbitration. The parties have not specified the format for the arbitration of these issues. Seagate, however, represents that the parties have "agreed to a single arbitration in which all of the issues to be arbitrated can be considered" (Dkt. No. 428 at 13).

Seagate argues that NIU separately breached the insurance contracts (during the periods where it did pay) by reducing its payments according to AIU's extra-contractual billing guidelines. This order disagrees to the following extent. NIU contracted to pay reasonable rates. On its own accord, NIU elected to pay reduced sums it believed were reasonable. It does not matter whether NIU based the reduced rates on AIU's billing guidelines or a book of random numbers. This is not a question of breach, but rather a dispute over the reasonableness of the full amounts due. Thus, it falls squarely within the realm of disputes the parties have already agreed to arbitrate.

**CONCLUSION**

To the foregoing extent, Seagate's motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**. NIU's cross-motion for summary judgment is **DENIED**. No further summary judgment motions will be permitted. The sole remaining issue regarding whether NIU participated in Seagate's defense between September 2005 and August 2007 (and, contingently, whether prejudgment issue is due on unpaid sums) shall proceed to trial. Would the parties agree to arbitrate this issue? If not, the trial of this issue (and this issue only) will occur on

**AUGUST 19, 2013 AT 7:30 A.M.**, and the final pretrial conference will be on **AUGUST 5 AT 2PM**. In light of the prior orders, all issues that were not teed up for resolution in this round of briefing are deemed **ABANDONED AND WAIVED**.

**IT IS SO ORDERED.**

Dated: June 21, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE